IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMPSON K., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-1298 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Thompson K. ("Claimant") moves to reverse the final decision of the Commissioner of Social Security's ("Commissioner") denial of Claimant's application for a period of disability and Disability Insurance Benefits ("DIBs"). (Dckt. #20). The Commissioner seeks summary judgment, (Dckt. #27), asking this Court to uphold the decision to deny benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons that follow, Claimant's motion to reverse the decision of the Commissioner is denied and the Commissioner's motion for summary judgment is granted.

**I.      BACKGROUND**

      **A.      Procedural History**

On August 22, 2018, Claimant, who was forty-nine years old at the onset of his alleged disability, filed an application seeking DIBs due to lumbar spinal stenosis, lumbar radiculopathy, and low back pain arising from a motor vehicle accident on October 30, 2017. (R. 29, 64-65,

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Claimant only by his first name and the first initial of his last name.

1

371). His application was denied initially on January 28, 2019, and upon reconsideration on June 4, 2019. (R. 64-76, 78-90). Claimant filed a timely request for a hearing, which was held via telephone on June 9, 2020 before an Administrative Law Judge ("ALJ"). (R. 43-63). Claimant appeared with counsel and testified at the hearing, as did a vocational expert ("VE"). (*Id*.). On June 29, 2020, the ALJ issued a written decision denying Claimant's application for benefits. (R. 29-37). Claimant filed a timely request for review with the Appeals Council, who denied his request on January 8, 2021, (R. 2-8), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

### B. The Social Security Administration Standard to Recover Benefits

In order to qualify for disability benefits, a claimant must demonstrate that he is disabled. An individual does so by showing that he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If a claimant establishes that he has one or more physical or mental impairments, the ALJ then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, he is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. §404.1520(a)(4)(iii).

Before addressing the fourth step, the SSA must assess a claimant's residual functional capacity ("RFC"), which defines his exertional and non-exertional capacity to work despite the limitations imposed by his impairments. The SSA then determines at step four whether the claimant is able to engage in any of his past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, he is not disabled. *Id*. If the claimant cannot undertake his past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of his RFC, age, education, and work experience. An individual is not disabled if he can do work that is available under this standard. 20 C.F.R. §404.1520(a)(4)(v).

### C. The ALJ's Decision

The ALJ applied the five-step inquiry as required by the Act in reaching his decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged onset date of October 30, 2017, and that Claimant

3

met the insured status requirements of the Act through December 31, 2022. (R. 31). At step two, the ALJ determined that Claimant suffered from the severe impairment of degenerative disc disease with radiculopathy. (*Id*.). Proceeding to step three, the ALJ found that Claimant had no impairment or combination of impairments that meets or medically equals one of the listed impairments in the Regulations, including listing 1.04 ("Disorders of the Spine").

> Before turning to step four, the ALJ concluded that Claimant had the RFC:
>
> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) except the claimant requires the option to alternate between sitting and standing every thirty minutes throughout the workday. The claimant cannot climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot bend or twist on a repetitive basis. The claimant cannot work around hazards such as unprotected heights and exposed mechanical parts. The claimant cannot tolerate more than occasional exposure to extreme cold.

(R. 32). At step four, the ALJ concluded that Claimant could not perform his past work as a head janitor. (R. 35). Finally, at step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Claimant could perform, including in the representative positions of mail clerk (12,900 nationally-available jobs); cashier (140,000 jobs); and library clerk (14,400 jobs). (R. 36-37). Thus, the ALJ found Claimant was not under a disability from October 30, 2017, through June 29, 2020, the date of the decision. (R. 37).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir.

2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court determines whether the ALJ articulated an "accurate and logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413 (citation omitted).

### III. ANALYSIS

Claimant raises several arguments in support of reversal. Specifically, he argues that: (1) the ALJ erred in evaluating the medical opinions of record; (2) the ALJ improperly evaluated Claimant's subjective statements regarding his symptoms; (3) the ALJ erred in determining Claimant's RFC; and (4) the ALJ's decision was constitutionally defective in that it violates the separation of powers required by Article II of the Constitution. (Dckt. #20 at 8-15). As explained below, the Court disagrees with each argument and therefore affirms the ALJ's decision.

> A. **The ALJ's assessment of the medical opinion evidence is supported by substantial evidence.**

ALJs are not mandated to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a); *see also Mesha C. v. Kijakazi*, No. 21 C 6451, 2023 WL 2663569, at *2 (N.D.Ill. Mar. 28, 2023). Instead, ALJs will consider "supportability, consistency, the relationship of the treater with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Bethany G. v. Kijakazi*, No. 20-cv-50483, 2023 WL 2683501, at *3 (N.D.Ill. Mar. 29, 2023) (citing 20 C.F.R. §404.1520c(a), (c)). Consistency and supportability are the most important factors and courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, [but courts] do expect the ALJ to analyze the treating source's medical opinion 'within the multifactor framework delineated' in the regulation.'" *Bethany G.*, 2023 WL 2683501, at *3, *quoting Ray v. Saul*, 861 Fed.Appx. 102, 105 (7th Cir. 2021) (citations omitted); 20 C.F.R. §404.1520c(b)(2).

Here, the ALJ considered the medical opinions of treating physicians Randy Calisoff, M.D., and Alexander Sheng, M.D., as well as state agency consulting physicians Vidaya Madala, M.D., and Young-Ja Kim, M.D. Each physician found that Claimant was able to perform "light exertional work"[2] with additional postural and environmental limitations. (R. 35). The ALJ analyzed each of the physicians' opinions and found them to be persuasive. (R. 35).

---

[2] "'Light work' is defined as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job may also be considered light work if it requires 'standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday' with intermittent sitting." *Haynes v. Barnhart*, 416 F.3d 621, 627 n.1 (7th Cir. 2005), *quoting* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5-6.

Nonetheless, Claimant asserts that the ALJ's assessment of the medical opinions is erroneous for three reasons.

First, Claimant asserts that although the ALJ found the opinions of Drs. Sheng and Calisoff to be persuasive and adopted all of their restrictions that supported light work, the ALJ failed to adopt "their restrictions which more closely aligned with sedentary work." (Dckt. #10 at 12). The only additional restriction that Claimant asserts that the ALJ failed to accommodate, however, is Dr. Calisoff's finding that Claimant could sit for up to 60 minutes and stand for up to 30 minutes. (Dckt. #10 at 12 (citing R. 966)). According to Claimant, "[t]he ALJ did not even mention the specific sitting and standing limitations in the decision" and, had the ALJ done so, he would have concluded that Claimant was disabled because there are no jobs available to a person with those limitations. (Dckt. #10 at 12-13).

Claimant is mistaken. The ALJ found that Claimant had the RFC to perform light work "except the [C]laimant requires the option to alternate between sitting and standing every thirty minutes throughout the workday." (R. 32). Such a "sit/stand" option accommodates Dr. Calisoff's finding that Claimant could sit for up to 60 minutes and stand for up to 30 minutes because Claimant would have the ability to stand up or sit down every 30 minutes. Furthermore, the VE testified that a person who could perform the full range of light work subject to this "sit/stand" option and the other limitations specified by the ALJ would be able to perform at least three jobs (namely, mail clerk, cashier, and library clerk) that exist in sufficient numbers in the national economy. (R. 58-59); *see Borski v. Barnhart*, 33 Fed.Appx. 220, 224-45 (7th Cir. 2002) (whether a "sit/stand option" is efficacious requires the input of a vocational expert).[3]

---

[3] The VE further testified that no light work jobs would be available for a person who "needed to be able to sit up to 60 minutes at a time, and then could stand up to 30 minutes at a time." (R. 59). To reiterate, however, Dr. Calisoff found that Claimant "could" sit for up to 60 minutes at a time and not that he "needed" to be able to sit for that period of time. (R. 966).

Second, Claimant suggests that the ALJ may have erred by relying on Dr. Calisoff's opinion because it "may be less restrictive than the medical evidence suggests, as it does not take into consideration the range of motion limitations noted by [Claimant's] physical therapists upon subsequent examination." (Dckt. #20 at 13 (citing R. 1005)). However, the record cited by Claimant – an initial evaluation/plan of care for Claimant dated June 1, 2020 – *was* considered by the ALJ. (R. 35 (citing R. 1005)). Furthermore, the RFC fashioned by the ALJ incorporated limitations on Claimant's ability to climb, bend, squat, sit for more than 30 minutes, and stand for more than 30 minutes that were reflected in the June 1, 2020 record. (R. 32; R. 1005). Moreover, Claimant has provided no specifics as to what *additional* range of motion restrictions that he believes the ALJ should have incorporated into the RFC based on the physical therapist's record. Consequently, the ALJ made no error with respect his consideration of the June 1, 2020 record. *See, e.g.*, *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021) (claimant has the burden of proving that she is disabled, and she failed to do so where she did not show that her impairments caused any limitations beyond those found by the ALJ); *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (same).

Next, Claimant asserts that the ALJ erred by finding the opinions of the state agency consulting physicians (Drs. Madala and Kim) persuasive because the reasoning "behind this finding is vague and amounts to boilerplate language." (Dckt. #10 at 11). The Court disagrees. With respect to Drs. Madala and Kim, the ALJ found that:

> The Disability Determination Services reviewing physicians determined that the claimant retained the capacity to perform light exertional level work with additional postural and environmental limitations. Their opinions are persuasive evidence of the claimant's ability to perform such work. The reviewing physicians are impartial experts with Social Security Disability program knowledge and experience. In addition, as articulated in the forgoing discussion of the treatment record, their determinations are consistent with the evidence as a whole.

8

(R. 35) (internal citations omitted). This explanation was sufficient, particularly given that the reviewing physicians' opinions that Claimant could perform light work subject to additional postural and environmental limitations were consistent with Claimant's treating physicians' opinions that he could perform light work. (R. 35); *see Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (An ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability); *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *4 (Mar. 31, 2022) ("consistency assesses how a medical opinion squares with other evidence in the record.").

Claimant also asserts that the ALJ erred because the record shows that he had more restrictions than the state agency physicians found given that their opinions (which were issued in January and April of 2019) did not consider his June 1, 2020 physical therapist record. (Dckt. #29 at 5-6). The ALJ took note of the fact that Dr. Calisoff's latest assessment and other treatment records post-dated the state agency physicians' opinions but found that Claimant "did not report any significant worsening of symptoms since the Disability Determination Services review that would justify greater, *work-preclusive limitations*." (R. 35) (emphasis added). Nonetheless, the ALJ added even more restrictive limitations to Claimant's RFC than were recommended by Drs. Madala and Kim – who opined that Claimant had the RFC to perform a full range of light work except that he could never climb ladders, ropes, or scaffolds (R. 72, 86-87) – to account for Dr. Calisoff's more recent opinion and other treatment records. (R. 32). This was permissible and reflects that the ALJ gave "reasoned consideration" to the evidence presented by Claimant. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). In effect, the ALJ found the state agency physicians' opinions persuasive as of the time they were issued and

he tailored the RFC to reflect greater limitations that were warranted by more recent evidence. This was not error.

> **B.     The ALJ's assessment of Claimant's subjective statements is supported by substantial evidence.**

Claimant asserts that the ALJ provided scant analysis of his symptoms but instead recited the medical record in a way that focused on medical findings showing that he was making improvements and ignored the fact that his back problems were caused by a progressive disease that worsened over time. (Dckt. #20 at 14). Claimant further asserts that the ALJ did not acknowledge that his symptoms waxed and waned and failed to consider multiple periods of time when his condition "was possibly more disabling" than the ALJ believed it to be. (*Id.*).

Any challenge to the ALJ's symptom evaluation faces a high hurdle. Indeed, the Court will not overturn the ALJ's findings regarding Claimant's subjective symptoms unless they are "patently wrong," meaning they lack any explanation or support in the record. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022); *Elder*, 529 F.3d at 413-14. SSR 16-3p provides guidance to ALJs for assessing a claimant's symptoms by laying out a two-step process in which the ALJ first determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce her symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Wilder*, 22 F.4th at 654.

The ALJ then must evaluate the "intensity, persistence, and functionally limiting effects" of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities. SSR 16-3p, 2017 WL 5180304, at *3. In making this evaluation, the ALJ should consider the entire case record, as well as: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of pain or symptoms; (3) precipitating and aggravating factors; (4) type, dosage, and side effects of medication; (5)

treatment other than medication; (6) any measures other than treatment the individual uses to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304, at *7-8.

The ALJ dutifully followed SSR 16-3p here. After carefully considering the evidence, the ALJ found that Claimant had a medically determinable impairment (namely, degenerative disc disease with radiculopathy) that could reasonably be expected to cause the alleged symptoms. (R. 33). The ALJ then considered Claimant's statements about his symptoms and specifically referenced Claimant's hearing testimony that: (1) he had difficulty standing and sitting and could only stand for ten minutes before needing to sit and could sit for only ten minutes before needing to stand; (2) cold weather exacerbated his symptoms; (3) he could lift up to twenty pounds; and (4) his physician prescribed pain medication that was not effective and caused him to go to the washroom often. (R. 33).[4]

The ALJ went on, however, to determine that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 33). Specifically, the ALJ analyzed the record evidence on a month-by-month basis between May 2018 and May 2020 and supported his finding by citing to record evidence that:

> (1) In June 2018, July 2018, November 2018, and February 2020, Claimant refused more aggressive forms of treatment (such as surgery, treatment with neuromodulators, and a prescription for Gabapentin) and opted to continue with conservative care, (R. 33-34 (citing R. 492, 584, 586, 594, 990));

---

[4] The ALJ's comprehensive review of Claimant's subjective symptom statements refutes Claimant's contention that the ALJ "cherry-picked" his statements to only highlight evidence that refuted his disability claim. (Dckt. #20 at 14). Moreover, the ALJ's overall assessment of Claimant's subjective symptoms repeatedly notes the waxing and waning of Claimant's pain and functionality, (R. 33-35), and the ALJ expressly acknowledged the progressive nature of Claimant's impairment by citing MRIs showing that his lumbar area had "slightly progressed degenerative changes" between 2017 and 2019. (R. 34).

11

(2) In September 2018, Claimant reported he took a car trip to the Wisconsin Dells in the summer of 2018 though his wife drove because he had back pain, (R. 34 (citing R. 407));

(3) In September 2018, Claimant reported that he was able to walk for several blocks without any increased pain, (R. 34 (citing R. 405));

(4) In October 2018, Claimant reported that he retained the capacity to perform personal care, prepare meals, and perform household chores despite the fact that his conditions affected his ability to perform a number of physical activities, (R. 33 (citing 254-266));

(5) In March 2019, Claimant reported that he drove regularly, exercised occasionally, and that his daily activity included running errands, (R. 34 (citing R. 624));

(6) In May 2019, Claimant reported that physical therapy helped ease his pain and improve his mobility and strength, (R. 34 (citing R. 737, 770, 783));

(7) In February 2020, Claimant reported that he was driving part-time for Uber, (R. 35 (citing 990)); and

(8) Claimant's treating physicians (Drs. Calisoff and Sheng) and the two state agency consulting physicians (Drs. Madala and Kim) all opined that Claimant was able to perform light exertional work with certain limitations, (R. 34-35).

The ALJ's reliance on these factors to discount Claimant's subjective statements regarding the severity of his symptoms is supported by well-established precedent. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (conservative treatment is substantial evidence to demonstrate lack of disabling conditions); *Annett S. v. Saul*, No. 19 C 6518, 2021 WL 1946342, at *12 (N.D.Ill. May 14, 2021) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)) ("an ALJ is entitled to consider the routine and conservative nature of a claimant's treatment in assessing the claimant's credibility"); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated.") (internal quotation marks omitted); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) (ALJ permissibly considered travel as part of a combination of activities that undermined

claimant's subjective complaints); *Berger*, 516 F.3d at 544-45 (the ALJ permissibly considered claimant's ability to work a part-time job when assessing his subjective statements regarding his impairment).

The fact that the ALJ did not mention every piece of evidence cited by Claimant is of no moment where – as here – the ALJ did not ignore an entire line of evidence that is contradictory to his findings. *See, e.g.*, *Gedatus v. Saul*, 994 F.3d 893, 901, 903 (7th Cir. 2021); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Furthermore, Claimant's effort to minimize the significance of the evidence cited by the ALJ[5] is nothing more than an invitation to reweigh the evidence, which the Court cannot do. *Gedatus*, 994 F.3d at 901.

In sum, for these reasons, the Court finds that the ALJ's assessment of Claimant's subjective complaints is supported by substantial evidence. *Elder*, 529 F.3d at 413-14; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

    **C.    The ALJ's formulation of Claimant's RFC is supported by substantial evidence.**

"The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *Murphy v. Colvin*, 759, F3d 811, 817 (7th Cir. 2014); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (The RFC "is the most an individual can work despite his or her limitations or restrictions."). The RFC must be assessed based on all the relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). The task of assessing a claimant's RFC is reserved to the Commissioner. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "When determining a

---

[5] *See, e.g.*, (Dckt. #29 at 10 (Admitting that Claimant reported being able to walk several blocks without any increased pain but noting that there was only one such report in the record)).

13

claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment, . . . [and a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

> As the Seventh Circuit has made clear:
>
> The relevant regulation, SSR 96-8p, lists seven strength functions that an ALJ must consider when assessing a claimant's RFC to work: lifting, carrying, sitting, standing, walking, pushing, and pulling. The regulation also requires an ALJ to describe 'how the evidence supports each conclusion [about a strength function], citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'

*Jarnutowski*, 48 F.4th at 774, *quoting* SSR 96-8p, 1996 WL 362207, at *34478. Nonetheless, a court "may affirm an ALJ's decision that does not conform with SSR 96-8p's requirements if [the court is] satisfied that the ALJ 'buil[t] an accurate and logical bridge from the evidence to her conclusion.'" *Jarnutowski*, 48 F.4th at 774, *quoting Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). In other words, an ALJ's RFC analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Here, the Commissioner asserts that Claimant's challenge to the ALJ's assessment of his RFC must fail because the ALJ's RFC has greater limitations than those found by any of the physicians who either treated Claimant or reviewed his records. (Dckt. #28 at 12-13 (citing cases)); *Gedatus*, 994 F.3d at 904 ("A fundamental problem is [claimant] offered no opinion from any doctor to set sitting limits or any other limits, greater than those the ALJ set."); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

14

While Claimant does not quarrel with this legal principle, he does assert that Dr. Calisoff set a greater limitation than the ALJ found in the RFC with respect to his ability to sit and stand. (Dckt. #10 at 10). However, as explained above in Section III(A), the "sit/stand" option in the ALJ's RFC accommodates Dr. Calisoff's limitations on Claimant's sitting and standing. Thus, the Commissioner's assertion that no physician found greater limitations for Claimant than are found in the RFC is correct.

Claimant also contends that the ALJ did not indicate how he considered Claimant's activities of daily living and witness statements when he formulated the RFC. (Dckt. #10 at 9). This too is wrong. As explained in Section III(B), the ALJ expressly considered Claimant's statements regarding his symptoms and his activities of daily living and he tied this evidence directly to the various limitations he included within the RFC. (*See* R. 34-35). The ALJ also explained the reasons he adopted limitations in the RFC after analyzing evidence weighing for *and* against a finding of disability. (R. 33-35); *Young*, 362 F.3d at 1000-02.

Finally, Claimant asserts that the ALJ did not explain why his obesity – which the ALJ acknowledged, (R. 31), and the record indicated was an "active" problem, (R. 628, 642, 648, 803) – did not limit him further. (Dckt. #20 at 11). However, the ALJ *did* address Claimant's obesity by noting that Claimant "did not allege obesity as a condition that limited his ability to work." (R. 33). In particular, the ALJ cited Claimant's disability report form where Claimant was asked to list all of the physical or mental conditions that limited his ability to work and Claimant failed to list obesity. (R. 199). In any event, even if the ALJ had failed to address Claimant's obesity, such an error would have been harmless because Claimant has failed to explain how his obesity hampers his ability to work. *See, e.g.*, *Stepp v. Colvin*, 795 F.3d 711,

15

720 (7th Cir. 2015); *Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *13 (N.D.Ill. Dec. 19, 2019).

Likewise, Claimant has not specified how the combined impact of his other non-severe impairments would lead to additional RFC limitations, as was his burden, nor has he cited to evidence supporting further limitations from the combined effect of those impairments. *See Weaver v. Berryhill*, 746 Fed.Appx. 574, 579 (7th Cir. 2018) (ALJ's error harmless where claimant fails to identify any evidence of combined effects of impairments that would justify additional RFC limitations); *see Richards v. Berryhill*, 743 Fed.Appx. 26, 30 (7th Cir. 2018) ("[P]ointing to various diagnoses and complaints and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation."); *Ivair M. v. Berryhill*, No. 18 C 3884, 2019 WL 2085139, at *4 (N.D.Ill. May 13, 2019) ("Instead of pointing to any specific errors in the RFC, Plaintiff recites his diagnosis, treatment, and complaints. But this does not establish work-related limitations or show that the ALJ should have included additional limitations in the RFC.").

In sum: the ALJ's findings comply with SSR 96-8p and are supported by substantial evidence. *See Jarnutowski*, 48 F.4th at 774.

### D. Claimant's Separation of Powers Argument Fails as a Matter of Law

Claimant's constitutional argument is also without merit. Relying on the Supreme Court's holding in *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183, (2020), Claimant contends that the structure of the SSA – and therefore the ALJ's denial of his benefits – is constitutionally defective. (Dckt. #20 at 15-16). In *Seila Law*, the Court held that Congress cannot limit the President's ability to remove the Director of the Consumer Financial Protection Bureau without good cause consistent with the separation of powers required by

16

Article II of the Constitution. 140 S.Ct. at 2192. Claimant now argues that the SSA's structure under 42 U.S.C. §902(a)(3), violates the Constitution because, according to Claimant, this structure "deprived [Claimant] of a valid administrative adjudicatory process." (Dckt. #20 at 14). The Commissioner concedes that §902(a)(3) "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," but "without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination." (Dckt. #28 at 2). The Court agrees.

In *Collins v. Yellen*, 141 S.Ct. 1761, 1789 (2021), the Supreme Court clarified that a party challenging an agency action as violative of the separation of powers must provide a nexus between the limitation on the President's removal power and the harm caused to that party. *See Deborah H. v. Kijakazi*, Case No. 3:21-cv-1195-DWD, 2023 WL 2743549, at *12 (S.D.Ill. Mar. 31, 2023); *see also Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022) ("A party challenging an agency's past actions must instead show how the unconstitutional removal provision *actually harmed* the party – for example, if the President would have removed the agency's head but for the provision or, alternatively, if the agency's head 'might have altered his behavior in a way that would have benefitted' the party.") (emphasis in original), *quoting Collins*, 141 S.Ct at 1789. Claimant makes no such showing here. Instead, Claimant simply asserts that the Commissioner's lack of constitutional authority flowed downstream, stripping adjudicatory authority from the Appeals Council and the ALJ. (Dckt. #20 at 14-15). As courts have explained, this argument, without more, fails. *See Deborah H.*, 2023 WL 2743549, at *12 (claimant's constitutional argument fails to demonstrate any connection between limited removal power and denial of benefits); *Shilo C. v. Kijakazi*, No. 20 C. 7797, 2023 WL 2745023 at, *10

(N.D.Ill. Mar. 31, 2023) (same) (collecting cases).[6] The Court therefore declines to overrule the ALJ on this ground.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse the ALJ's decision, (Dckt. #20), is denied and the Commissioner's motion for summary judgment, (Dckt. #27), is granted. The decision of the Commissioner is affirmed.

**Date: October 25, 2023**

_____
**Jeffrey I. Cummings
United States Magistrate Judge**

---

[6] As the Commissioner correctly notes, numerous courts outside this Circuit have also widely rejected this same constitutional argument. *See* (Dckt. #28 at 6, n.2).